# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 16-569

THE COTTONPORT BANK

VERSUS

LSJ, L.L.C., ET AL.

\*\*\*\*\*\*\*\*\*\*

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, DOCKET NO. 2015-2516
HONORABLE KERRY SPRUILL, PRESIDING
\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy and Billy Howard Ezell,
Judges.

**WRIT DENIED.**

Miche Moreau
Anthony J. Roy, III
Roy & Roy Law Office
117 East Ogden Street
P.O. Box 363
Marksville, LA  71351
(318) 253-0275
**ATTORNEY FOR PETITIONER/RESPONDENT**
   The Cottonport Bank

Dennis A. Pennington
Michael J. Harig
Pennington & Martinez
4707 Bluebonnet Boulevard, Suite A
Baton Rouge, LA  70809
(225) 293-8880
**ATTORNEY FOR DEFENDANTS/APPLICANTS**
  LSJ, L.L.C., Southeastern Crane, L.L.C., Flintstone Development, L.L.C., Cade
  Dubois, Ashley Dubois, Clyde Dubois, Jr. and Dawn Dubois

Bradley L. Drell
Gold, Weems, Bruser, Sues & Rundell
2001 MacArthur Drive
Alexandria, LA  71301
(318) 445-6471
**ATTORNEY FOR DEFENDANTS/APPLICANTS**
  LSJ, L.L.C., Southeastern Crane, L.L.C., Flintstone Development, L.L.C., Cade
  Dubois, Ashley Dubois, Clyde Dubois, Jr. and Dawn Dubois

**COOKS, Judge.**

In this writ application, the relators-defendants, LSJ, L.L.C., Southeastern Crane, L.L.C., Flintstone Development, L.L.C., Cade Dubois, Ashley Dubois, Clyde Dubois, Jr. and Dawn Dubois, seek supervisory writs from the district court's judgment overruling their exceptions of improper venue. For the following reason, we find no error in the district court's ruling, and deny the writ application.

## FACTS AND PROCEDURAL HISTORY

This case arises from the default on Promissory Notes securing loans from respondent, The Cottonport Bank, to Major Industry Service, Inc. (MIS), a company in the business of selling and leasing cranes. Clyde Dubois, Jr. (Dubois), a relator herein and owner of MIS, was the guarantor for the loans, and a security interest in MIS's movable equipment and property, namely cranes, was the collateral for the loans. When MIS and Dubois defaulted on the loans, Cottonport Bank obtained a judgment on March 11, 2016 against them in the amount of $2,213,950.07 (which includes attorney fees). In its judgment, the trial court recognized that Cottonport Bank had a security interest in approximately 186 movables constituting its collateral. This litigation took place in the Twentieth Judicial District Court.

Cottonport Bank asserts, after the default, it learned that: (1) the collateral was not owned, controlled or managed by MIS, contrary to Dubois' claim, (2) Dubois owned another company, LSJ, L.L.C. (LSJ) and moved assets back and forth between the two companies, and (3) MIS began to operate under a different name, Southeastern Crane, L.L.C. (Southeastern Crane). Out of the 186 items listed as collateral in the default judgment, the bank was able to locate about ten pieces of equipment in Baton Rouge. Cottonport Bank subsequently filed a Petition for Conversion, Fraud, Deceit, Piercing the Corporate Veil, Misrepresentation, and Unfair or Deceptive Practices against companies owned by

3

the relators, including Dubois, and companies owned by Dubois and family members involved in those companies. The respective companies and family members were domiciled in four different parishes. That petition was filed in the Twelfth Judicial District Court, Avoyelles Parish, on January 13, 2016. Cottonport Bank asserted there was a single elaborate scheme devised by Dubois to conceal assets constituting the collateral. Therefore, rather than file four separate lawsuits in four separate parishes regarding the same set of facts, Cottonport Bank filed its lawsuit in Avoyelles Parish. Cottonport Bank acknowledged it was not aware of where the wrongful conduct occurred; thus, it filed suit in Avoyelles Parish, contending that was the site where the damages were sustained. They maintain this complies with La.Code Civ.P. art. 74, which allows suit to be filed where the damages were sustained or where the wrongful conduct occurred.

In response, the relators filed respective exceptions of improper venue.[1] A hearing was held on April 4, 2016, and the matter was taken under advisement. On June 6, 2016, the trial court denied the exceptions in a written judgment and issued written reasons for ruling. The trial court specifically noted there were "limited facts presented in this case." The trial court concluded the record was devoid of any evidence of any wrongful conduct occurring or damages sustained "in any other parish than Avoyelles Parish."

On June 16, 2016, the relators filed a motion for new trial for the purpose of allowing the trial court to reconsider its ruling in light of this court's ruling in *D&D Drilling & Exploration, Inc. v. XTO Energy, Inc.*, 15-626, 15-631 (La.App. 3 Cir. 5/4/16), 191 So.3d 1166, *writ denied*, 16-1540 (La. 11/18/16), ___ So.3d ___. The relators also filed a motion to stay the proceeding. In lieu of a formal hearing, a telephone conference on the motions was held on July 7, 2016, and both motions

---

[1] The relators also filed dilatory exceptions of prematurity, lack of procedural capacity, and improper cumulation of actions, which were passed by the parties as moot.

4

were denied. The relators then filed a writ application seeking review of the trial court's denial of the exceptions of improper venue. The writ was called up on the court's regular docket and argued before a panel of this court.

## ANALYSIS

Initially, we note Cottonport Bank filed a "Motion to Supplement Appellate Record, or in the Alternative, to Lift the Stay, and Allow the Trial Court to Supplement the Record." Specifically, due to error, two affidavits executed by the private process server to be filed with the service return were not made part of the record by the trial court. Cottonport Bank seeks to supplement the record with the affidavits. This motion was referred to the panel, and we hereby grant the motion to supplement the record to include the affidavits.

Cottonport Bank contended venue in Avoyelles Parish was appropriate under La.Code Civ.P. art. 74, which provides, in pertinent part:

> An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained. An action to enjoin the commission of an offense or quasi offense may be brought in the parish where the wrongful conduct occurred or may occur.

In its written reasons for judgment, the trial court attempted to determine where the wrongful conduct occurred. The trial court specifically noted only Cottonport Bank presented oral testimony and that the relators relied on Cottonport Bank's filings and memoranda. The trial court found the relators' argument, that the Nineteenth Judicial District Court was the most convenient forum for all witnesses and was the parish where the alleged transactions occurred, was not supported by the evidence and law.

The trial court discussed the testimony of Lynn Bordelon, a bank officer for Cottonport Bank. Mr. Bordelon testified Clyde Dubois sent documentation to Cottonport Bank that MIS owned equipment that was either co-owned, managed or

5

leased by other companies also owned by Mr. Dubois. Mr. Bordelon maintained Cottonport Bank relied upon misrepresentations provided by Mr. Dubois when it made accounting decisions in reference to the loan in question, decisions which caused Cottonport Bank economic loss.

The trial court added that the trial testimony of bank officer Joshua Johns, combined with that of Mr. Bordelon, supported the finding that venue was proper in Avoyelles Parish. Mr. Johns testified that Mr. Dubois listed four separate parishes as domiciles, and that the former address for MIS is a defunct business site with a "for sale" sign posted. Mr. Johns also testified Southeastern Crane, organized in 2015, designated the defunct business site of MIS as its registered business location.

The trial court determined the wrongful act—the presentation of misleading documentation regarding collateral—and Cottonport Bank's subsequent reliance on same occurred in Avoyelles Parish and resulted in the alleged damages to the bank in Avoyelles Parish. The trial court also specifically noted the record was void of any evidence that wrongful conduct occurred, or that damages were sustained, in any parish other than Avoyelles Parish. Therefore, the trial court concluded venue was proper in Avoyelles Parish.

The relators argue the rule of law established in *Colvin v. Louisiana Patient's Compensation Fund Oversight Board*, 06-1104 (La. 1/17/07), 947 So.2d 15, applies in this case. In *Colvin*, the Louisiana Supreme Court held that the situs of where the damages were sustained was where the underlying acts occurred. The trial court addressed the *Colvin* decision, noting this court in *Juneau v. State*, 06-1653 (La.App. 3 Cir. 5/2/01), 956 So.2d 728, 732, *writ denied*, 07-1177 (La. 9/14/07), discussed *Colvin* as follows:

> Our Louisiana Supreme Court granted writs and found that Bossier Parish was an improper venue and that the only venue proper for these suits was East Baton Rouge Parish as provided by La.R.S.

6

13:5104(A)[.] The *Colvin* court expressly abrogated the established jurisprudence above that allowed for application of the general venue statutes, La.Code Civ.P. arts[.] 42 and 71 through 85, to the State or one of its agencies.

As such, the trial court concluded the *Colvin* decision was limited to cases against the state where venue is proper in East Baton Rouge Parish.

Relators contend the rule of law established in *Colvin* was reiterated by this court in *D&D Drilling*, 191 So.3d 1166, which did not involve the state. That opinion provided:

We see no sound policy reason to ignore the legion of cases that hold that the parish where the wrongful conduct occurred is the parish where damages were sustained under Article 74. *See, e.g., Town of Eunice v. M&L Constr. Co.*, 123 So.2d 579 (La.App. 3 Cir. 1960). In *Fogleman Truck Line, Inc. v. Southern Bulk Carriers, Inc.*, 532 So.2d 226 (La.App. 3 Cir. 1988), we quoted with approval our colleagues on the first circuit in *Belser v. St. Paul Fire & Marine Ins.*, 509 So.2d 12 (La.App. 1 Cir. 1987). The *Belser* court undertook an exhaustive analysis of the jurisprudence interpreting Article 74, and concluded:

The common thread that runs through the *Coursey-Foster-King-Williams-Lapeyrouse* line of cases is that, if any damage is caused to the plaintiff *in the parish where the wrongful conduct occurred*, that parish, and no other, is "the parish where the damages were sustained" for purposes of Article 74. This holding is consistent with the jurisprudence that Article 74 must be strictly construed. This holding evidences public policy determinations by the *Coursey-Foster-King-Williams-Lapeyrouse* courts that forum shopping should be minimized in actions for the recovery of damages for offenses and quasi offenses.

*Id.* at 18-19. The loss of Rig 1 is the basis for D&D's suit. That loss occurred in LaSalle Parish. LaSalle Parish is the only proper venue under Article 74.

*Id.* at 1170.

We find *D&D Drilling* distinguishable from this matter because there were sufficient facts available to determine where the wrongful conduct occurred. In *D&D Drilling*, the wrongful conduct that occurred was the loss of the drilling rig, which occurred in LaSalle Parish. In the present case, we find there are numerous questions, and precious few, if any, answers as to the ownership and location of the

7

cranes. The relators did not introduce any evidence at the hearing shedding light on where the wrongful conduct occurred.

We agree with Cottonport Bank that the trial court correctly relied upon *Simmons v. Templeton*, 96-592 (La.App. 4 Cir. 11/27/96), 684 So.2d 529, *writ denied*, 96-3089 (La. 2/7/97), 688 So.2d 508, in which the sellers of stock filed suit in Orleans Parish alleging damages from the buyer's fraud in a sale. The court found that because the sellers received a misleading financial report and entered into the transaction in Orleans Parish, venue was proper in that parish, and not in the parish where the documents were prepared. The court specifically found the individuals had not sustained damage in the parish where the wrongful conduct, preparation of the report, had occurred. The *Simmons* court concluded that venue was proper in the parish where the plaintiffs relied on the report. The court commented that its finding would not encourage forum shopping because the single venue applied.

In its written reasons for ruling, the trial court discussed the ruling in *Simmons* in relation to the present case:

> The same can be said by analogy when comparing the *Simmons* case to these pending proceedings. The Court further noted in *Simmons*, that the real purpose for the venue rules is to relate venue to the place where the damages occurred. Again, the same observation is appropriate in the case at bar. Finally, the Court in *Simmons* found that the facts of that case did not involve "subjectively nebulous" damages allegedly suffered in [*Coursey v. White*, 184 So.2d 625 (La.App. 4 Cir. 1966)], which may have occurred anywhere. Instead, the *Simmons* case involved damages sustained at a specific foreseeable time and place for the defendants' business product was brought to the parish of the plaintiffs' residence by an executive of the company for which the product was prepared in furtherance of a proposed business transaction. As mentioned above, under the circumstances presented before the Court in the *Simmons* case, Orleans Parish was held an appropriate venue. A careful analyzation of the facts presented at bar merits a similar legal conclusion, *i.e.*, Avoyelles Parish is an appropriate venue for the present proceedings.

As noted above, the relators did not introduce any evidence establishing where the wrongful conduct occurred. We agree with Cottonport Bank that it was

8

within the relators' power and control to disclose where any wrongful conduct occurred. Having chosen not to do so, we find the trial court was within its discretion under La.Code Civ.P. art. 74 to find venue was appropriate in the parish where the damages were sustained.

As Cottonport Bank notes, the case of *Belser v. St. Paul Fire & Marine Ins. Co.*, 509 So.2d 12 (La.App. 1 Cir.1987), is supportive of the trial court's conclusion in the present case. In that case, the appellate court attempted to determine where the wrongful conduct occurred. The *Belser* court observed a common thread in the jurisprudence -- "where no damage is caused to the plaintiff in the parish where the wrongful conduct occurred, a parish where the damages were sustained is a proper venue." *Id.* at 20. In the present case, the trial court concluded it was impossible to determine where the wrongful conduct occurred, due largely in part to the relators' failure to offer evidence of same. The testimony of Lynn Bordelon supports that conclusion, wherein he acknowledged, "I don't know who owns the collateral. Who has it or where it is."

It is clear from the evidence in the record that the misleading collateral documentation was studied by Cottonport Bank in Avoyelles Parish, and that its collateral department acted upon this documentation by determining Dubois owned sufficient collateral and recommending the loan. The lawsuit in question alleges a scheme in which Dubois and his family members acted together to move pieces of equipment from one company to another and to change deposit accounts and the beneficiary of lease payments. A plaintiff invoking the provisions of La.Code Civ.P. art. 74 "must allege sufficient facts to prove that the chosen venue is proper." *Sorrento Companies, Inc. v. Honeywell Intern., Inc.*, 04-1884 (La.App. 1 Cir. 9/23/05), 916 So.2d 1156, 1162. For the purposes of determining a proper venue, the plaintiff's allegations must be accepted as true. *Cacamo v. Liberty Mut. Fire Ins. Co.*, 99-3479 (La. 6/30/00), 764 So.2d 41. "If the grounds for an

objection of improper venue do not appear on the face of a plaintiff's petition, the burden is on a defendant to offer evidence in support of his position." *Jewell v. Dudley L. Moore Ins. Co.*, 95-2453 (La.App. 1 Cir. 6/28/96), 676 So.2d 223, 225, *writ denied*, 96-2015 (La. 11/8/96), 683 So.2d 273.

As discussed above, the relators failed to submit any evidence of where the wrongful conduct occurred, and thus, the trial court determined venue was proper under La.Code Civ.P. art. 74 in the parish where the damages were sustained, Avoyelles Parish. We find no error in the trial court's judgment, and the relators' writ is denied.

We also, effective this date, lift the stay of proceedings issued by this court on October 6, 2016.

**WRIT DENIED.**